Edward L. Munson, pro se.

STATE of Oklahoma ex rel. OKLA-HOMA BAR ASSOCIATION, Complainant,

v.

Edward L. MUNSON, Respondent.

SCBD Nos. 3840, 3894.

Supreme Court of Oklahoma.

Feb. 16, 1993.

As Corrected March 16, 1993.

### ORDER

The two bar disciplinary actions pending against Respondent, SCBD No. 3840 and SCBD No. 3894, are hereby consolidated. The surviving number shall be SCBD No. 3840. Before this Court is an affidavit filed by Edward L. Munson in each of the above-styled bar disciplinary actions, pursuant to Rule 8.1, Rules Governing Disciplinary Proceedings, 5 O.S.1991 ch. 1, App. 1–A, requesting that he be allowed to resign his membership in the Oklahoma Bar Association and relinquish his right to practice law, and Complainant's Application for Order Approving Resignation Pending Disciplinary Proceedings. Upon consideration of the matter we FIND:

1. Respondent Edward L. Munson executed his resignation pending disciplinary proceedings on February 1, 1993.

2. Respondent's resignation was freely and voluntarily tendered; he was not acting under coercion or duress and he was fully aware of the consequences of submitting his resignation.

3. Respondent was aware of formal disciplinary proceedings pending against him in SCBD #3840, OBAD #1062, styled *State of Oklahoma ex rel. Oklahoma Bar Association v. Edward L. Munson.* A formal hearing under Rule 6, Rules Governing Disciplinary Proceedings was held before the Professional Responsibility Tribunal in that matter and the Tribunal recommended to this court that Respondent be suspended for two (2) years and one (1) day for violations of Rules 8.4(c) and 1.15(b) of the Rules of Professional Conduct. The matter was pending in this Court awaiting the

making final disposition of the matter shall ap-    ply as provided in Rule 7.4."

filing of briefs at the time Respondent filed his resignation. The Trial Panel found that Respondent had been previously suspended from the practice of law for a period of one year by order of this Court in OBAD # 813, wherein Respondent had been charged with two counts of misrepresentation and neglect. A copy of the Report of the Trial Panel, filed January 7, 1993, is attached to this Order.

4. Respondent was aware of the filing of a formal complaint against him in the Supreme Court on January 8, 1993, styled *State of Oklahoma ex rel. Oklahoma Bar Association v. Edward Lee Munson,* OBAD # 1094, SCBD # 3894, alleging violations of the mandatory provisions of Rules 1.3, 1.4, 1.15(a) and (b), Rule 1.16(a) and (b) and Rule 8.4(c) and (e) of the Rules of Professional Conduct, and Rules 1.4(b) and 5.2, Rules Governing Disciplinary Proceedings. A copy of the complaint is attached to the Respondent's resignation, and a copy thereof is attached to this Order.

5. Respondent was aware that the Complainant had filed in this Court an Application for Interim Suspension Order, pursuant to Rule 6.2A, Rules Governing Disciplinary Procedure, requesting that he be immediately suspended from the practice of law until further order of this Court.

6. Respondent recognizes and agrees that he may not make application for reinstatement to membership in the Oklahoma Bar Association prior to expiration of five years from the date of this order;

7. Respondent has agreed to comply with Rule 9.1, Rules Governing Disciplinary Proceedings, and he acknowledges that he may be reinstated to practice law only upon compliance with the conditions and procedures prescribed by Rule 11, Rules Governing Disciplinary Proceedings.

8. Respondent has agreed to pay all costs incurred by the Oklahoma Bar Association in the investigation of this matter.

9. The resignation pending disciplinary proceedings executed by Respondent is in compliance with Rule 8.1, Rules Governing Disciplinary Proceedings, 5 O.S.1991, ch. 1, App. 1–A.

10. Respondent's name and address appear on the official roster maintained by the Oklahoma Bar Association as: Edward L. Munson, OBA # 6515, P.O. Box 1006, Tahlequah, Oklahoma 74456.

11. Respondent's resignation should be approved.

IT IS THEREFORE ORDERED THAT Complainant's application and Respondent's resignation be approved.

IT IS FURTHER ORDERED that Respondent's name be stricken from the Roll of Attorneys, and that he make no application for reinstatement to membership in the Oklahoma Bar Association prior to the lapse of five years from the date of this order.

IT IS FURTHER ORDERED that Respondent comply with Rule 9.1 of the Rules Governing Disciplinary Proceedings, 5 O.S. 1991, ch. 1, App. 1–A.

IT IS FURTHER ORDERED that Respondent pay the costs of the Oklahoma Bar Association in regard to investigation of these matters, in the amount of $2,228.51, within a reasonable time from the date of this order.

HODGES, C.J., LAVENDER, V.C.J., and SIMMS, HARGRAVE, OPALA, ALMA WILSON, KAUGER and WATT, JJ., concur.

SUMMERS, J., not participating.

ATTACHMENT

In the Supreme Court of the State of Oklahoma

Before the Professional Responsibility Tribunal

OBAD # 1062

SCBD # 3840

Jan. 7, 1993

State of Oklahoma, ex rel. Oklahoma Bar Association, Complainant,

vs.

Edward L. Munson, Respondent.

REPORT OF THE TRIAL PANEL

This proceeding was commenced pursuant to Rule 6, Rules Governing Disciplinary

Proceedings, 5 O.S. Ch. 1, App. 1–A (1991). The complaint against Respondent, Edward L. Munson, was heard on December 11, 1992. At that time, both testimonial and documentary evidence was presented to the Trial Panel. Complainant, State of Oklahoma, ex rel. Oklahoma Bar Association, was represented by Gloria Miller White, Assistant General Counsel. Respondent appeared *pro se.*

Respondent, a private practitioner for nineteen years (Tr. 103), stands charged with violating the following provisions of the Oklahoma Rules of Professional Conduct:

1. Rule 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit or misrepresentation). In Count I, Complainant alleges that the Respondent maintained two client trust accounts. One of the accounts was maintained at the First State Bank of Tahlequah, Oklahoma, and the other at the Delaware County Bank in Jay, Oklahoma. Summarized, Complainant contends that on or about June 28, 1991, Respondent misrepresented the nature of a certain business transaction to the Delaware County Bank in order to induce the bank to give him immediate funds on a $48,000.00 check written by Respondent on his account at First State Bank; and, to wire transfer the funds covered by said check to a bank in another state. Complainant further claims that the check tendered to Delaware County Bank was dishonored for insufficient funds and that by writing and tendering the same, Respondent knowingly misrepresented the status of the account. In Count II, Complainant alleges that on or about July 2, 1991, Respondent wrote another insufficient funds check in the amount of $6,851.33 on his trust account at the Delaware County Bank. This check was made payable to Jack and Priscilla Krogh and it, too, was dishonored for insufficient funds at the time it was presented for payment. Complainant contends that, by writing and tendering said check, Respondent knowingly misrepresented the status of the account, all in violation of Rule 8.4(c) ORPC.

2. Rule 1.15(b) (failure to deliver or return the funds of a third party after having been requested to do so). Complainant also alleges in Count I that after the insufficient funds check tendered to the Delaware County Bank was dishonored, a civil judgment was taken against Respondent which he failed to pay in violation of Rule 1.15(b).

In Count III, the Complainant alleges that Respondent had been previously disciplined and suspended, which allegation is presented as an aggravating circumstance and to support enhanced discipline.

## SUMMARY OF EVIDENCE AND FINDINGS OF FACT

### BACKGROUND

Apart from the circumstances relating to Count III, the evidence relates to two separate instances of alleged misconduct, both of which arose in the context of a single underlying transaction between Respondent and Dr. Reuel Vammen and several members of his family. The Vammens either owned or claimed an interest in significant real estate holdings in northeastern Oklahoma.

Respondent wanted to set up what he described as an "integrated farm operation" (Tr. 104). At the same time, the Vammens wanted to sell approximately 8,000 acres to Respondent for that purpose. Mr. Munson planned to finance this business venture through the Minority Business Loan Development Agency. In order to get the real estate "approved", it was apparently necessary to comply with various health laws and regulations of the Environmental Protection Agency. According to Respondent's testimony, a substantial amount of money was going to be required (Tr. 104–105) and the Vammens loaned him the sum of $62,000 (Tr. 104 and 112) for this purpose.

At some point in early 1991, Respondent experienced difficulties with his financing through the government. Apparently, he and the Vammens pursued other avenues of financing without success. As a result, Dr. Vammen requested repayment of the

money in May of that year. According to Mr. Munson, there were six or eight members of the Vammen family who had to be repaid and Dr. Vammen's portion of the $62,000 amount was approximately $46,000. (Tr. 105–106)[1]

The evidence establishes that Mr. Munson first attempted to repay Dr. Vammen on June 12, 1991. On that date, he wrote a check payable to Vammen and his wife in an amount slightly in excess of $46,000 which was drawn on "Edward L. Munson and Associates, Attorneys at Law, Client Trust Account" at the First State Bank of Tahlequah, Oklahoma. (Complainant's Exhibit 1) The check was presented for payment and dishonored for insufficient funds. In fact, according to the applicable bank statement, the balance in the account on the date this check was written was $187.75. (Complainant's Exhibit 4) Moreover, the highest balance in the account for the entire month of June, 1991 was only $1,878.09. With the dishonor of this instrument, Mr. Munson's debt to the Vammens (a debt which he does not dispute) remained unpaid. These circumstances explain subsequent events which form the basis for this proceeding.

## COUNT I: THE DELAWARE COUNTY BANK INCIDENT

On June 28, 1991, Mr. Munson was in Jay, Oklahoma, for the purpose, among others, of meeting with Dr. Vammen. At about 11:30 a.m., he entered the Delaware County Bank and approached Senior Vice President, Owen Butler, in the lobby. (Tr. 81) Munson advised Mr. Butler that he had closed an escrow account for some clients who were purchasing real estate from the Vammens. Munson also advised Butler that he would not be able to return to Tahlequah in time to send a bank wire from his bank account there (the First State Bank trust account) and "... wondered if he might transfer funds from his account in Tahlequah to the bank at Jay and have the wire sent from Jay to a bank

in Texarkana." (Tr. 82) Butler consulted with bank President, Charles Brown, concerning Munson's request. Both men assumed that since the transaction was represented as an escrow closing for Mr. Munson's clients, the money from Munson's Tahlequah trust account was their money and that granting immediate credit was not a problem. Accordingly, his request was approved. (Tr. 81–82)

The evidence establishes that Mr. Munson's representations to the Delaware County Bank officers were untrue in many significant respects. Nothing in the evidence suggested that Munson had any clients who had purchased real estate from the Vammens, and, by his own admission, the request for immediate credit and wire transfer did not have anything to do with a real estate closing. (Tr. 39) Moreover, Mr. Munson did not disclose either to Mr. Brown or Mr. Butler that the true situation involved a personal transaction between him and Dr. Vammen. In sum, by using his trust accounts, and by misrepresenting the nature of this transaction (and concealing his personal involvement in it), Mr. Munson created the untrue impression that one or more of his clients were the real participants, and that he was simply transferring client funds from one account to another.

Mr. Butler also testified that had the bank known the true facts, immediate credit customarily would not have been granted per Mr. Munson's request. Instead, the availability of the funds would have been delayed pending clearance of the check drawn on the Tahlequah trust account. He said, in fact, that the bank's agreement to grant immediate credit was based on the representations of Mr. Munson, (Tr. 85) which later proved to be false.

The evidence was undisputed that at the time Mr. Munson wrote the $48,000 check on June 28, 1991, there were insufficient funds to cover it in the bank at Tahlequah. According to the bank statement applicable

---

1.  One of the other family members was Priscilla Krogh, who is Dr. Vammen's sister. She was a co-payee on the check which forms the basis of Count II of the Complaint.

to this $48,000 check,[2] the balance in the account on the date of the instrument (June 27, 1991) was minus $454.49. On the date the check was actually written (June 28, 1991), the balance was minus $264.29. In addition, Respondent admitted the insufficiency of the funds in the account in his testimony before the Trial Panel. Significantly, he also admitted that at the time he wrote the check and deposited it in the Delaware County Bank, he knew there were insufficient funds to cover it. His testimony at pages 16 and 17 of the transcript is revealing:

"Q: (By Ms. White) Mr. Munson, you have been handed Complainant's Exhibit 2, and what is that?

A: This is a check that I delivered to Delaware County Bank for deposit in the account there.

Q: And it's in the amount of?

A: $48,000.00.

Q: And is drawn on what bank?

A: First State Bank of Tahlequah.

Q: And this check was dated June 27, 1991, correct?

A: Yes.

Q: Just 15 short days after the check for $46,000, drawn on that same account, it was returned for insufficient funds?

A: Fifteen days afterwards. I don't know how long or short they were.

Q: Had you made deposits into that account to cover this check prior to the time you wrote it?

A: No, ma'am.

Q: So at the time you wrote this check on June 27, or on or about June 27th of '91, you knew you did not have sufficient funds in your First State trust account to cover this check; is that correct?

A: Yes."

On the same day, June 28, 1991, Munson deposited the subject bogus check in his trust account at Delaware County Bank, (Complainant's Exhibit 3) and the sum of $46,000 was wire transferred to Dr. Vammen's bank in Texarkana and applied to Respondent's personal indebtedness. According to Munson, he is no longer indebted to the Vammens and the balance (approximately $20,000 over and above the check) was paid out of his personal funds. (Tr. 113) Significantly, these personal funds were not used to repay Delaware County Bank for the money it transferred in reliance on Respondent's worthless check.

The evidence and stipulations entered into between the parties establishes that as a result of the dishonor of the check by the First State Bank of Tahlequah, Delaware County Bank lost $46,466.04.[3] (Pretrial Order signed by Respondent, and Tr. 5) As of the date of the hearing before the Trial Panel, December 11, 1992, the bank had not been made completely whole and Mr. Munson still owed the bank $8,267.35. In the interim, the bank was required to and did sue Mr. Munson in the District Court of Delaware County, under Case No. C-91-212. After suit was filed, summary judgment was entered in favor of the bank in November of 1991. (Tr. 101) Thereafter, various collection efforts were undertaken by the bank, including two garnishments, a citation for contempt of court (of which Respondent was found guilty) and setoffs against Respondent's Delaware County Bank trust account.

## COUNT II: THE KROGH INCIDENT

Meanwhile, another member of the Vammen family sought repayment of a portion of the original $62,000 loan from Mr. Munson. As a result, Respondent wrote another check on the Delaware County Bank trust account dated July 2, 1991. The check was made payable to Priscilla Krogh (Dr. Vammen's sister) and her husband, Jack Krogh. Said check was in the amount of $6,851.33 and was dishonored by the Delaware County Bank for insufficient funds. The bank statement applicable to

---

2. This is the same bank statement which applies to the check written to Dr. Vammen and his wife on June 12th.

3. There was no evidence presented on the point, but it is assumed that this amount does not include attorney's fees and costs.

this instrument establishes that on the date it was written, the balance in the Delaware County trust account was $956.47. The bank statements for the applicable account during the months of June and July, 1991 show that during those two months, there were never sufficient funds in the account to cover the check to the Kroghs.

## CONCLUSION

### COUNT I

The Trial Panel finds, by clear and convincing evidence, that the allegations of the Complaint with respect to Count I are true. By his own admission, Respondent tendered and deposited a check in his trust account at the Delaware County Bank, which was drawn on his trust account at the First State Bank of Tahlequah, Oklahoma, and which was dishonored for insufficient funds. He also admitted that, at the time he wrote the check, he *knew* that there was not enough money in the trust account to cover it.[4] This knowledge provides the obvious motive for his request for immediate credit and wire transfer of funds on the same day. Accordingly, the Trial Panel finds that his representations to the Delaware County Bank and its officers that the check was good were knowingly false and fraudulent.

The Trial Panel further finds that the representation Respondent made to Owen Butler that he had closed an escrow account for clients who had purchased property from the Vammens was, likewise, knowingly false and made for the purpose of inducing the Delaware County Bank to extend immediate credit on a check which he knew to be worthless. Respondent's conduct was in violation of Rule 8.4(c) of the Oklahoma Rules of Professional Conduct and includes all of the types of conduct prohibited thereby, i.e., dishonesty, fraud, deceit and misrepresentation.

The Trial Panel further finds that Respondent's conduct as alleged in Count I of the Complaint violated Rule 1.15(b) of the Oklahoma Rules of Professional Conduct. It provides:

"Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this Rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property."

The Bar Association contends that Respondent violated the above rule because he did not immediately pay the judgment which was rendered against him in the District Court of Delaware County. The Trial Panel finds that the failure to pay a civil judgment, standing alone, would not ordinarily constitute a violation of the rule. In this instance, however, Respondent's failure to pay the subject judgment was not the true gravamen of his offense. Among other things, Rule 1.15(b) prohibits a lawyer from wrongfully acquiring and converting the funds of a client or third person. Under the evidence, Respondent was clearly guilty of conversion and violating of Rule 1.15(b). The money received as a result of his multiple misrepresentations never became his money because it was obtained under false pretenses. Moreover, Respondent caused the bank's money to be applied to the satisfaction of his personal obligation to Dr. Vammen, and, thereby, converted it to his own use and benefit.

Respondent contends that he intended to cover the check with monies he had on hand, and, through the collection of various accounts receivable from his clients. Even if true, such contention would not constitute a defense to the ethical violations with which he has been charged. His representations to the Delaware County Bank about the underlying transaction, and the status

---

4. In fact, he testified that if the funds in all of his accounts (two operating accounts and two trust accounts) were combined, there still would not have been enough money to cover the check. (Tr. 108)

of his account were knowingly false and fraudulent at the time they were made and his future intentions were irrelevant. In any event, the Trial Panel finds that his contentions and statements in that regard lack essential credibility and are unworthy of belief. The evidence suggests that there was not enough money "on hand" at the time the subject check was written to cover it.[5] In addition, Respondent did not call any client or other witness to testify either that such client was indebted to him or intended to pay him any money in sufficient time to cover the check.[6] Finally, there is this: Respondent testified that, among other things, he expected to receive approximately $15,000 from a former client, Mr. Helm, and that he intended to partially cover the check with that money. He said that the $15,000 represented his portion of a contingent fee on a claim against Farmland Insurance Company. According to his "understanding", Respondent was to receive one-third of any recovery. (Tr. 41) In response to this claim, the Bar Association called Mr. Helm as a witness. He disputed the assertion that he owed Mr. Munson any money for his work on the insurance claim and testified that, at his request, Respondent even released his attorney's lien nearly a month *before* the subject check was written.[7] He also testified that when he asked for a lien release, Respondent never claimed any fees. (Tr. 53–54)

Respondent also contends that no client funds were present in the trust accounts at any material time. This assertion, likewise, is of no aid to his position. Neither Rule 8.4(c) nor 1.15(b) is limited to inappropriate conduct with respect to a client. Plainly, his representations were no less fraudulent because they were made to a non-client, and, the conversion of funds was no less wrongful because the property belonged to a third person. In fact, Rule 1.15(b) applies to the property of third persons by its express terms.

## COUNT II

The Trial Panel further finds that the allegations contained in Count II of the Complaint are true by clear and convincing evidence. By tendering the check alleged in Count II, Respondent fraudulently misrepresented that the check was good. Thus, his conduct violated the provisions of Rule 8.4(c) of the Oklahoma Rules of Professional Conduct.

Accordingly, the Trial Panel finds and concludes as a matter of law that Respondent has committed the specific acts detailed above, all of which constitute professional misconduct in violation of the Oklahoma Rules of Professional Conduct, and, all of which are cause for professional discipline as provided in the Rules Governing Disciplinary Proceedings, 5 O.S. Ch. 1, App. 1–A (1991). The Trial Panel further finds that Respondent has been previously charged with two counts of misrepresentation and neglect and was suspended from the practice of law for a period of one year by order of the Supreme Court of Oklahoma under case number OBAD # 813. Therefore, the Trial Panel recommends that Respondent be suspended from the practice of law for a period of two years and one day. With the imposition of such a suspension, Respondent will be required to re-establish his fitness and good moral character before he can be reinstated to the practice of law.

Respectfully submitted,

/s/Charles F. Alden III
CHARLES F. ALDEN III
Presiding Master and Panel Member

/s/John F. McCormick, Jr.
JOHN McCORMICK, JR.
Panel Member

---

**5.** In his testimony, Respondent was unable to identify any day since the check was written on which he could have covered it. (Tr. 108–109)

**6.** Respondent mentioned several such clients in his testimony (Tr. 33), but none of them appeared as witnesses on his behalf.

**7.** Munson admitted that he released the attorney's lien on May 22, 1991 (Tr. 43). It makes little sense that he would do so if he had a legitimate claim for fees, especially since the client had hired new counsel, R. Thomas Seymour, to complete the litigation.

/s/Neil W. McElderry, Jr.
Neil W. McElderry, Jr.
Panel Member

## ATTACHMENT

In the Supreme Court of the
State of Oklahoma

OBAD # 1094

SCBD # 3894

Jan. 8, 1993

State of Oklahoma ex rel. Oklahoma Bar Association, Complainant,

v.

Edward Lee Munson, Respondent.

## COMPLAINT

Complainant, State of Oklahoma ex rel. Oklahoma Bar Association, for its claim against Respondent, Edward L. Munson, alleges and states:

1. Respondent is a member of the Oklahoma Bar Association and is licensed to practice law by the Supreme Court of the State of Oklahoma. Respondent was so licensed at all times relevant to this complaint.

2. To the best knowledge, information and belief of Complainant, Respondent has committed specific acts which constitute professional misconduct in violation of the Oklahoma Rules of Professional Conduct, 5 O.S. (Supp.1988) Ch. 1, App. 3–A, and are cause for professional discipline as provided in the Rules Governing Disciplinary Proceedings, 5 O.S. (1991) Ch. 1, App. 1–A. This standard of conduct, adopted and enforced by the Supreme Court of the State of Oklahoma, provides guidelines by which all attorneys are to practice law in Oklahoma.

3. These proceedings are begun pursuant to Rule 6, Rules Governing Disciplinary Proceedings.

4. The official Oklahoma Bar Association roster address of Respondent is: Edward Lee Munson, OBA # 6515, P.O. Box 1006, Tahlequah, Oklahoma 74465.

## COUNT I

5. James L. Gordon died on August 7, 1987. His 76 year old widow, Betts Gordon ("Gordon") was named personal representative of his estate and hired Respondent to handle the probate.

6. On December 11, 1987, Respondent filed all the initial papers to begin the probate.

7. On December 21, 1987, the court entered an order admitting the will to probate and issued letters testamentary. Also on that date the notice to creditors was filed.

8. The only other pleading ever filed by Respondent was on application to withdraw filed in January 1989 after being suspended by this Court in OBAD # 813, SCBD # 3448 on December 12, 1988.

9. Concerning his suspension, Respondent told Gordon that while acting as a good samaritan in a case he had "smarted off" to a judge while taking up for someone the judge was treating unfairly. Consequently, the judge had taken away his right to practice for one year, but Gordon was not to worry. Respondent told her he could still represent her in that he would simply have another attorney file the papers he would prepare.

10. On March 11, 1992, Respondent drove to Gordon's home in Catoosa, Oklahoma and convinced her to entrust him with estate funds totalling twenty-five thousand, nine hundred, seventy-two dollars and 42/100 ($25,972.42). Gordon wrote check # 1883 drawn on her account # 701615 held at First Bank of Catoosa made payable to Edward L. Munson and Associates.

11. Respondent was to hold the money in his trust account and after the judge signed the necessary papers, he would distribute one-half back to Gordon and one-quarter to each of the other two heirs to settle the estate.

12. On that same day, after getting the check from Gordon at her home in Catoosa, Respondent went directly to First Bank of Catoosa and converted the personal check to cashier's check # 115421 in the amount

of $25,972.42 payable to Edward L. Munson and Associates.

13. On the following day, March 12, 1992, Respondent cashed the cashier's check at a bank in Tahlequah. Respondent did not place the cash in his trust account but claims to have kept the cash in his desk.

14. On October 29, 1992, after several months had passed, distribution had not been made, and Respondent would not return Gordon's phone calls, one of Gordon's sons, Jim, wrote a letter of complaint concerning Respondent to the Oklahoma Bar Association Office of the General Counsel.

15. On Friday, December 4, 1992, Respondent agreed to allow a representative from the General Counsel's office to verify Respondent was in fact holding the entire $25,972.42 in cash in his office.

16. It was agreed someone would meet Respondent on Monday morning at approximately 8:00 a.m.

17. On Monday, December 7, 1992, at shortly after 8:00 a.m. Assistant General Counsel, Gloria White, ("White") met Respondent at his Tahlequah office.

18. After removing a zippered bag from a desk drawer, Respondent waived a group of bills in front of White. Although Respondent had previously agreed to allow White to verify the amount of cash he was holding, Respondent would not allow White to count the money.

19. Additionally, although Respondent had agreed to deposit the $25,972.42 into Gordon's account at Boatman's bank in Tulsa on Monday, December 7, Respondent did not make that deposit until several days later.

20. Respondent's conduct violates the mandatory provisions of Rules 1.3, 1.4, 1.15(a) and (b), and 8.4(c) of the Oklahoma Rules of Professional Conduct and Rule 1.4(b) Rules Governing Disciplinary Proceedings, and constitutes grounds for professional discipline.

## COUNT II

21. On or about October 29, 1992, the Office of the General Counsel at the Oklahoma Bar Association received a written grievance from Jim Gordon against Respondent, the substance of which is set out in Count I above.

22. On the 30th day of October, 1992, pursuant to Rule 5.2, Rules Governing Disciplinary Proceedings, the Office of the General Counsel mailed a letter to Respondent at his current roster address advising him of the grievance, enclosing a copy of the written grievance, and further advising him that he was required to file a written response within twenty (20) days as provided by Rule 5.2.

23. On November 23, 1992, the Office of the General Counsel federal expressed a second letter to Respondent at his current roster address advising him to respond within five (5) days of the receipt of the letter or issuance of a subpoena would result.

24. On November 24, 1992, the Office of the General Counsel received a request from Respondent to be allowed until December 8, 1992, to answer. Respondent was immediately notified in writing and by telephone that his response time would be extended until November 30, 1992.

25. When Respondent's response was not received on November 30, 1992, he was served with a subpoena to take his deposition on December 4, 1992.

26. On December 4, 1992, Respondent appeared and gave his deposition in response to the grievance filed by Jim Gordon.

27. During that deposition Respondent provided counsel for the Bar Association a copy of his response letter dated November 28, 1992.

28. Respondent stated under oath that he had personally deposited the original of the letter on Saturday, November 28, 1992, between 3:00 p.m. and 4:00 p.m. in an inside box at the Tahlequah post office.

29. Respondent's original response letter was received by the General Counsel's Office on December 7, 1992. The envelope

in which it was received was post marked on December 4, 1992, in Oklahoma City.

30. Respondent's conduct violates the mandatory provisions of Rule 5.2, Rules Governing Disciplinary Proceedings, and 8.4(e) Oklahoma Rules of Professional Conduct and constitutes grounds for professional discipline.

## COUNT III

31. On September 19, 1989, Respondent was appointed executor in Tulsa County case number P–89–808, In the Matter of the Estate of David E. Deatherage, Deceased.

32. On or about May 3, 1990, Respondent opened account number 39–44–465 held at First Bank and Trust of Tahlequah, Oklahoma, entitled Estate of David E. Deatherage, deceased, Edward L. Munson, Executor, ("Deatherage account").

33. Ruth E. Deardeuff ("Deardeuff") contacted Respondent concerning social security benefits she was receiving for her minor daughter, Kristen. Deardeuff was uncertain as to how she could use the money.

34. Respondent suggested Deardeuff leave the money with him until guidance could be obtained from the Social Security Administration as to where and how Deardeuff could spend the money.

35. On September 21, 1992, Deardeuff gave Respondent check number 2853 drawn on account number 118–059 held at First State Bank of Hulbert, Oklahoma, in the amount of $22,505.37, payable to Edward L. Munson, attorney.

36. On that same day, Respondent deposited check #2853 into the Deatherage account. Prior to making the deposit, the Deatherage account balance was approximately $1,885.83.

37. On September 25, 1992, a Deatherage account check to Nadine Cumsey, Respondent's client, in the amount of $17,184.58, dated September 14, 1992, cleared the Deatherage account leaving a balance in the account of $6,575.28. Respondent issued the check to Ms. Cumsey to repay her for money he was holding for her.

38. At no time during the next sixty (60) days was the balance in the Deatherage account sufficient to cover the $22,505.37 allegedly being held by Respondent for Deardeuff.

39. Respondent's conduct violated the mandatory provisions of Rule 1.16(a) and (b) Oklahoma Rules of Professional Conduct and Rule 1.4(b) Rules Governing Disciplinary Proceedings and constitutes grounds for professional discipline.

WHEREFORE, premises considered, Complainant, Oklahoma Bar Association, prays Respondent, Edward Lee Munson, be disciplined as this Court finds equitable and proper, and for such other relief as this Court finds appropriate.

Done by the direction of the Professional Responsibility Commission this 8th day of January, 1993.

/s/Richard Dennis
Richard Dennis, Vice-chairman
Professional Responsibility
Commission

/s/Dan Murdock for

Gloria Miller White, Asst.

General Counsel, OBA #12036

Oklahoma Bar Association