2006 OK 21

In the Matter of the REINSTATEMENT OF Thomas Allen MASSEY to Membership in the Oklahoma Bar Association and to the Roll of Attorneys.

SCBD No. 4886.

Supreme Court of Oklahoma.

April 11, 2006.

---

Jack S. Dawson, Miller Dollarhide, Oklahoma City, OK, for petitioner, Thomas Allen Massey.

Loraine Dillinder Farabow, Assistant General Counsel, Oklahoma Bar Association, Oklahoma City, OK, for respondent, Oklahoma Bar Association.

LAVENDER, J.

¶1 Petitioner, Thomas Allen Massey filed a petition for reinstatement to membership in the Oklahoma Bar Association (OBA). The matter is before us pursuant to Rule 11 (Reinstatement), Rules Governing Disciplinary Proceedings (RGDP), 5 O.S.2001, Ch.1, App.1–A, as amended. The OBA, through the Office of the General Counsel, opposes reinstatement and a Professional Responsibility Tribunal trial panel (PRT) that held a hearing in the matter, recommends reinstatement be denied. After *de novo* review we deny reinstatement.

¶2 This petition for reinstatement was filed in February 2004.[1] The PRT held a hearing on September 30, 2004 and filed its trial panel report in November 2004. The

1. Petitioner, Thomas Allen Massey filed a previous quest for reinstatement, Supreme Court Bar Docket (SCBD) Case Number 4418. He moved to withdraw the matter without prejudice on April 2, 1999. A response was filed on April 9, 1999 by respondent, the Oklahoma Bar Associa-

tion (OBA) stating it had no objection to his withdrawing that reinstatement quest. By Order filed April 12, 1999 his motion to withdraw that reinstatement matter without prejudice was granted.

parties' briefs were filed in December 2004. The record (including the transcript and exhibits) was filed in March of 2005.

¶ 3 In March of 1993 in Supreme Court Bar Docket (SCBD) Case Number 3905, petitioner filed an affidavit requesting he be allowed to resign his membership in the OBA and relinquish his right to practice law. At the time, twenty (20) grievances were pending against him with the OBA. The OBA requested this Court to approve petitioner's resignation pending disciplinary proceedings, which the Court did by an Order filed March 22, 1993. The grievances against him as spelled out in his March 1993 affidavit involved multiple and varied claims of misconduct. The claimed misconduct included, but was not limited to, neglect of client matters, failure to communicate with clients, receiving referrals from one or more other law firms or attorneys without authorization from the client, misrepresentation to a client and failure to provide appropriate accountings to clients. As will be explored in more detail below, petitioner on multiple occasions was also embezzling money from his attorney trust fund account, conduct which eventually led to his pleas of guilty and convictions on five State felony charges, four of embezzlement by an attorney and one of forgery in the second degree, based on a plea bargain/agreement.

¶ 4 Petitioner was admitted to practice law in Oklahoma in 1968. At the time of his offending conduct he had been an attorney for over two decades. We do not deem it necessary to detail every position petitioner has held from 1968 to the present. Early in his legal career he worked as an Assistant District Attorney in Hughes County, Oklahoma. He then worked as an attorney with the United States Securities and Exchange Commission.[2] He also was a general counsel for a corporation in Pennsylvania for a period of time.[3] Apparently, from 1976 until some time in 1988 he was a self-employed attorney in Oklahoma, although during some of this period he also worked for the United States Military as a contracting or procurement officer, having joined the National Guard in 1953. For about two years in the late 1980s he worked for the United States Department of Defense as a Deputy to the Secretary of Defense. From about May 1991 to about February 1993 he was self-employed by Massey & Associates in Oklahoma City, basically his law firm.

¶ 5 Petitioner started Massey & Associates after agreeing with another law firm to accept overflow referrals of personal injury type cases. He started with only a secretary, but the case load was large and the firm grew to about twenty (20) employees. At some point in time during the existence of Massey & Associates petitioner began embezzling money from his attorney trust fund account to assist him in running the law firm, including making payroll. Petitioner appeared to testify at the PRT hearing in this matter that he did not pay himself (i.e., his salary) with any of the embezzled funds and that he paid himself from other cases he was working on. In his December 1, 2004 brief filed in this matter at note 2, page 13 he appears to have recognized the personal benefit to himself by his misconduct in that it is stated, "[petitioner] did benefit by keeping his office open and his staff paid, including his own salary." As we understand his testimony, initially he paid the money back, but at some point in time he was not in a position to do so.

---

2. In 1972 petitioner was admitted to the District of Columbia Bar upon motion. After an initial temporary suspension in June 1993, the District of Columbia Court of Appeals disbarred him as a member of that Bar on the basis of his resignation pending disciplinary proceedings in Oklahoma, as reciprocal discipline. *In re Massey*, 725 A.2d 1014 (D.C.1999). The District of Columbia Court of Appeals' disbarment order in *In re Massey* was to be effective the date petitioner filed an affidavit required by D.C.Bar Rule XI, § 14(g), something the District of Columbia Court of Appeals indicated it appeared he had not done at the time of the opinion in *In re Massey*. 725 A.2d at 1016. His June 1993 temporary suspension by the District of Columbia Court of Appeals, however, was to remain in effect until his disbarment became effective. *Id.*

3. His Reinstatement Questionnaire—Exhibit 10 admitted at the September 30, 2004 hearing before the Professional Responsibility Tribunal trial panel (PRT)—indicates he failed the Pennsylvania bar exam in 1973.

¶ 6 At least fifty (50) victims were involved and as we understand the record at least $136,000.00 was embezzled by petitioner. In other words, petitioner's misconduct was not an isolated event, but was widespread. The OBA Client's Security Fund paid out almost $53,000.00 as a result of petitioner's misconduct. Petitioner has made restitution in the approximate amount of $136,000.00, either through payments made to the Oklahoma Department of Corrections (DOC) or the OBA. The final payment was made to the OBA in April 2004.

¶ 7 Criminal charges were filed against petitioner in Oklahoma County. Pursuant to a plea bargain/agreement he pled guilty to five State felony charges, four of embezzlement by an attorney and one of forgery in the second degree. He was sentenced on the convictions in June 1995. Title 21 O.S.1991, § 1454 [4], the embezzlement statute to which he pled guilty, and was convicted and sentenced as to four charges, provided:

> If any person being a trustee, banker, merchant, broker, attorney, agent, assignee in trust, executor, administrator or collector, or being otherwise entrusted with or having in his control property for the use of any other person, or for any public or benevolent purpose, fraudulently appropriates it to any use or purpose not in the due and lawful execution of his trust, or secretes it with a fraudulent intent to appropriate it to such use or purpose, he is guilty of embezzlement.

Title 21 O.S.1991, § 1592, the forgery in the second degree statute to which he pled guilty, and was convicted and sentenced as to one charge, provides:

> Every person who, with intent to defraud, utters or publishes as true any forged, altered or counterfeited instrument

or any counterfeit gold or silver coin, the forging, altering or counterfeiting of which is hereinbefore declared to be punishable, knowing such instrument or coin to be forged, altered or counterfeited, is guilty of forgery in the second degree.

¶ 8 The Judgment and Sentence in each criminal case (all dated June 29, 1995) and some other pertinent documents from the criminal cases are in this record. They show petitioner received five year suspended sentences on the four embezzlement convictions, three of the sentences (CF–94–6092, CF–94–6093 and CF–94–6094) to run concurrently, but consecutively to the remaining conviction in CF–94–6091. In other words, after the five year suspended sentence in CF–94–6091 was served, he would begin to serve the five year suspended sentences (concurrently) for the other three embezzlement convictions, for a total of ten (10) years on suspension. On the remaining conviction in CF–94–6095 for forgery in the second degree he received a seven year suspended sentence, which was to run concurrent with the sentence in CF–94–6091. Thus, petitioner's suspended sentence(s) did not terminate until on or about June 29, 2005, i.e., subsequent to the time he filed this petition for reinstatement.[5]

¶ 9 The record indicates petitioner receives a military pension, he is seventy (70) years old and he is married. Since his resignation in 1993 he has worked at various jobs. These have included sales positions. They have also included loan officer positions in the mortgage business. At the time of the PRT hearing his testimony indicated he was in the commercial mortgage business and his OBA Reinstatement Questionnaire indicates he was manager of a lending corporation. No evidence was presented that petitioner has engaged in the unauthorized practice of law since his resignation from the OBA.

---

4. Title 21 O.S. § 1454 was repealed in 2002. 2002 Okla.Sess.Laws, Ch. 460, § 44. The repeal does not impact our disposition of the instant case.

5. Although petitioner appeared to testify at the PRT hearing to his understanding that his direct supervised probation ended after seven years, his testimony also showed an understanding his supervised probation (according to him some type of indirect supervision) was in effect until his final payment of restitution through the Okla-

homa Department of Corrections (DOC) in December 2003. As we read his December 27, 2004 reply brief, he concedes the documentary evidence in this record shows that his supervised probation was coextensive with his payment of restitution through DOC. The last restitution payment through DOC, as we view an attachment to petitioner's February 25, 2004 petition for reinstatement, appears to have been made in late December 2003.

¶ 10 Petitioner and five other witnesses testified on his behalf at the PRT hearing. These five witnesses have known him for varying lengths of time. They were his attorney in the criminal cases, his current church pastor, his CPA (also an attorney) and two other attorneys. Except for his pastor, all knew him prior to the offending conduct. These five witnesses, in essence, all believe petitioner is currently a good morally fit person. Evidence also showed petitioner is involved in his church and more than one of its activities or programs. The OBA called only one witness at the PRT hearing, an investigator employed by the OBA. The OBA does not contend petitioner has engaged in any bad behavior subsequent to his resignation.

¶ 11 Petitioner's own testimony seems to indicate he understands the wrongfulness of his conduct and the disrepute it brought upon the entirety of the legal profession. Petitioner also attempted through his testimony to assure this Court that he would never again engage in such criminal-type conduct. As we understand his testimony he also indicates he has changed from 1993, in that back then he pushed the envelope on taking risks, but today he would not take such risks.

¶ 12 The standard of review and factors considered in reinstatement cases after a resignation pending disciplinary proceedings were set out in *Matter of Reinstatement of Blevins*, 2002 OK 78, 59 P.3d 510. There, the following was stated:

> When this Court in the exercise of its exclusive jurisdiction considers a petition for reinstatement a *de novo* standard of review is applied. Recommendations of a PRT trial panel are merely advisory and, although Rule 11.5 (Findings Prerequisite to Reinstatement) requires the PRT to make certain findings as to a petitioner's moral character, competency in the law and whether he/she engaged in any unauthorized law practice during a period of suspension, disbarment or resignation, the ultimate responsibility and decision-making authority as to whether reinstatement is warranted rests with this Court.

Moreover, an applicant for reinstatement in petitioner's situation bears the heavy burden of showing, by clear and convincing evidence, that reinstatement is warranted. In regard to a reinstatement application, a petitioner that has resigned his membership in the OBA pending a bar disciplinary proceeding has the same burden as an individual that has been disbarred by this Court. In such a proceeding the applicant is required to present stronger proof of qualifications than one seeking admission to the OBA for the first time. Rule 11.4 (Standard of Proof for Petitions for Reinstatement), RGDP. This Court has also delineated eight factors considered in determining fitness for reinstatement. They are: (1) applicant's present moral fitness, (2) demonstrated consciousness of the conduct's wrongfulness and the disrepute it has brought upon the legal profession, (3) the extent of rehabilitation, (4) the original misconduct's seriousness, (5) conduct after resignation, (6) time elapsed since the resignation, (7) applicant's character, maturity and experience when he resigned, and (8) present legal competence.

*Matter of Reinstatement of Blevins*, 2002 OK 78, at ¶¶ 3–4, 59 P.3d at 511 (case citations omitted). Clear and convincing evidence is "that measure or degree of proof which produces in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *State ex rel. Oklahoma Bar Ass'n v. Green*, 1997 OK 39, 936 P.2d 947, 949, citing *Matter of C. G.*, 1981 OK 131, 637 P.2d 66, 71 n. 12.

¶ 13 Additionally, in *Matter of Reinstatement of Page*, 2004 OK 49, 94 P.3d 80, the following was set out:

> [O]ur cases make clear "that a felony conviction is not tantamount to a death sentence regarding the reinstatement of the license to practice law. Rather, each reinstatement decision is determined on a case-by-case basis, carefully weighing all factors." *Matter of Reinstatement of Anderson*, 2002 OK 64, ¶ 4, 51 P.3d 581, 583. However, "[w]e have also recognized that the more severe the offense the heavier the burden an applicant must overcome

to gain reinstatement...." *Matter of Reinstatement of Wright*, 1995 OK 128, 907 P.2d 1060, 1062, relying on *Matter of Reinstatement of Cantrell*, 1989 OK 165, 785 P.2d 312, 314. "Feelings of sympathy towards the applicant must be disregarded." *Matter of Reinstatement of Wright*, 907 P.2d at 1062. The proof concerning the matter must be sufficient to overcome this Court's former judgment adverse to the applicant. Rule 11.4, RGDP. Further, "[f]oremost consideration must be given to protecting the public welfare. Finally, there must be a determination that reinstatement would not adversely effect the Bar." *Matter of Reinstatement of Cantrell*, 785 P.2d at 313.

*Matter of Reinstatement of Page*, 2004 OK 49, at ¶ 3, 94 P.3d at 82. Of course, along with the seriousness of the original misconduct, the circumstances surrounding it are considered in evaluating a reinstatement application. Rule 11.4, RGDP. If applicable, restitution or the lack of restitution to injured parties will also be considered. *See id.*

█ ¶ 14 The PRT report makes a finding that petitioner has not engaged in the unauthorized practice of law during the period since his resignation. The record bears out that finding by clear and convincing evidence. As we view the PRT report, that body, in effect, identifies two main deficiencies supporting its recommendation that reinstatement be denied, 1) petitioner's failure to present clear and convincing evidence that he currently possesses competent legal skills in order to be reinstated and 2) an insufficient evidentiary showing that under similar pressures and circumstances involved with the practice of law, that petitioner would not again engage in the misconduct of embezzlement.

¶ 15 In that petitioner has not been a member of the OBA for a period well in excess of five years no reinstatement is appropriate under the RGDP without his taking and passing the regular examination given by the Board of Bar Examiners of the OBA, unless it is adequately shown that despite his long absence from law practice, "he has continued to study and thus has kept himself informed as to current developments in the law sufficient to maintain his competency." Rule 11.5(c), RGDP. Reinstatements have been denied, in part, on the basis of a failure to adequately show current competent legal skills. *See Matter of Reinstatement of Farrant*, 2004 OK 77, 104 P.3d 567; *Matter of Reinstatement of Turner*, 1999 OK 72, 990 P.2d 861; *Matter of Reinstatement of Hardin*, 1996 OK 115, 927 P.2d 545; and *Matter of Reinstatement of Bradley*, 1993 OK 107, 897 P.2d 243. Petitioner has not taken a continuing legal education course since 1992. He estimated that the last time he drafted a legal pleading was in 1992 or 1993. He has not clerked doing legal research for any attorneys. Although there is evidence of his reading the Oklahoma Bar Journal the last couple of years prior to the PRT hearing, various trade journals concerning legal, regulatory and compliance issues in the commercial mortgage industry and he discusses some legal issues, apparently four or five times a month with his CPA (also an attorney), neither this evidence nor any other evidence in the record suffices as clear and convincing evidence to show petitioner currently possesses competent legal skills to warrant his reinstatement.

█ ¶ 16 There is no question here that part of petitioner's misconduct involved multiple instances of misappropriation of client funds. We have recently reiterated that such "[m]isappropriation is the most serious of money-related professional misconduct." *Matter of Reinstatement of Fraley*, 2005 OK 39, ¶ 25, 115 P.3d 842, 849 (involved misappropriation of both law firm and client funds). This type of misconduct is "a profound breach of professional ethics as well as an offense against the common honesty expected of all trustworthy people of good character...." *Id.* Although neither petitioner's felony convictions nor the nature of his original misconduct act as insurmountable barriers to his reinstatement, we must have a firm conviction that petitioner would not again engage in similar misconduct for reinstatement to be warranted, i.e., the evidence must be clear and convincing on this latter point. *See Matter of Reinstatement of Hird*, 2001 OK 28, 21 P.3d 1043.

¶ 17 Although the instant record does contain evidence to support the view that peti-

tioner will not commit similar misconduct if readmitted, we must have a firm conviction or belief in that fact before reinstatement would be appropriate. The evidence contained in this record does not allow us to have such a firm conviction or belief. After giving due consideration to the evidence contained in this record (including his restitution and other evidence favorable to his reinstatement quest) and the appropriate factors examined in reinstatement proceedings, we determine petitioner has failed to carry his burden to show by clear and convincing evidence that he is entitled to reinstatement.[6]

¶ 18 Petitioner, Thomas Allen Massey's petition for reinstatement to membership in the Oklahoma Bar Association (OBA) is **DENIED.** It is also **ORDERED** that petitioner pay the costs of this matter in the amount of $1,190.92 **within ninety (90) days from the date this opinion becomes final.**[7]

¶ 19 ALL JUSTICES CONCUR.

---

6. In view of our disposition we determine it is unnecessary for us to decide in this case whether petitioner has substantially complied with Rule 9.1 of the Rules Governing Disciplinary Proceedings (RGDP), 5 O.S.2001, Ch. 1, App. 1–A. Rule 9.1 is the same now as when petitioner resigned from the OBA in 1993.

7. Rule 11.1(c), RGDP, 5 O.S.Rev.Supp.2005, Ch.1, App.1–A requires an applicant seeking reinstatement to pay the costs of investigating and processing the application for reinstatement as determined by the PRT and in addition the cost of the original and one copy of the transcript of any hearings held in the matter. The PRT, in its report filed November 2, 2004, recommends that petitioner be responsible for the costs of these proceedings. The OBA filed its Application to Assess Costs in this matter on March 2, 2005 and petitioner's response thereto was filed on March 8, 2005. Petitioner's response indicates he has no objection to the OBA's application. The application, with documentation, requests $1,190.92.