2010 OK 27

In the Matter of the REINSTATEMENT OF Edward Lee MUNSON, to Membership in the Oklahoma Bar Association and to the Roll of Attorneys.

SCBD No. 5540.

Supreme Court of Oklahoma.

March 16, 2010.

Aletia Haynes Timmons, Timmons & Associates, LLC, Oklahoma City, OK, for Petitioner.

Ted D. Rossier, Assistant General Counsel, Oklahoma Bar Association, Oklahoma City, OK, for Respondent.

WATT, J.:

¶ 1 This is the attorney's third time before this Court. Munson was suspended from the practice of law from December 12, 1988 through January 4, 1990 (*Munson I*)[1] for two counts of misrepresentation and neglect. The Bar Association filed a complaint against the attorney in 1992. The allegations were that the attorney: 1) misrepresented the nature of business transactions to a bank inducing the institution to provide immediate funds on a check drawn on an account at another bank; and 2) presented checks totaling approximately $55,000.00 knowing that there were insufficient funds on deposit in the accounts upon which they were drawn. Following the hearings in the consolidated causes, the trial panel recommend a suspen-

---

1. *State ex rel. Oklahoma Bar Ass'n v. Munson* (Munson I), OBAD No. 813 (1988).

sion of two years and one day. Thereafter, Munson filed an application, pursuant to Rule 8.1, Rules Governing Disciplinary Proceedings, 5 O.S.1991, Ch. 1, App. 1–A,[2] requesting that he be allowed to resign his membership in the Bar Association and relinquish his right to practice law. We consolidated the complaint heard by the trial panel with another complaint filed on January 8, 1993. The second complaint alleged the mishandling of an additional $50,000.00 and failure to respond. The Court approved the resignation on February 16, 1993 ordering Munson to comply with Rule 9.1, Rules Governing Disciplinary Proceedings, 5 O.S.1991, Ch. 1, App. 1–A[3] and to pay the costs of the proceeding within a reasonable time from the date of the order (*Munson II* ).[4] Today, we address Munson's petition for reinstatement.

¶ 2 Upon a *de novo* review,[5] we determine that the attorney did not present clear and convincing evidence that, if readmitted, his conduct would conform to the high standards required of a member of the Bar Association.[6] Therefore, we deny reinstatement and impose the costs of the proceeding in the amount of $1,705.47.[7] Our decision is sup-

**2.** Rule 8.1, Rules Governing Disciplinary Proceedings, 5 O.S.2001, Ch. 1, App. 1–A providing:

"A lawyer who is the subject of an investigation into, or a pending proceeding involving, allegations of misconduct may resign membership in the Oklahoma Bar Association, and thereby relinquish the right to practice law, only by delivering to the Commission an affidavit stating that the lawyer desires to resign and that:
(a) The resignation is freely and voluntarily rendered, the lawyer is not being subjected to coercion or duress, and the lawyer is fully aware of the consequences of submitting the resignation.
(b) The lawyer is aware that there is presently pending an investigation into or proceedings involving, allegations that there exist grounds for discipline, specifying particularly the misconduct alleged.
(c) The lawyer agrees that he may be reinstated only upon full compliance with the conditions and procedures prescribed by these Rules, and no application for reinstatement may be filed prior to the lapse of five years from the effective date of the resignation."

**3.** Rule 9.1, Rules Governing Disciplinary Proceedings, 5 O.S.2001, Ch. 1, App. 1–A providing in pertinent part:

"When the action of the Supreme Court becomes final, a lawyer who is disbarred or suspended, or who has resigned membership pending disciplinary proceedings, must notify all of the lawyer's clients having legal business then pending within twenty (20) days, by certified mail, of the lawyer's inability to represent them and the necessity for promptly retaining new counsel.... The lawyer must file, within twenty (20) days, an affidavit with the Commission and with the Clerk of the Supreme Court stating that the lawyer has complied with the provisions of this Rule, together with a list of the clients so notified and a list of all other State and Federal courts and administrative agencies before which the lawyer is admitted to practice. Proof of substantial compliance by the lawyer with this Rule 9.1 shall be a condition precedent to any petition for reinstatement."

**4.** *State ex rel. Oklahoma Bar Ass'n v. Munson (Munson II )*, 1993 OK 12, 848 P.2d 555.

**5.** *Matter of Reinstatement of Mumina*, 2009 OK 76, ¶ 2, 225 P.3d 804; *In re Reinstatement of Otis*, 2007 OK 82, ¶ 7, 175 P.3d 357; *In re Reinstatement of Massey*, 2006 OK 21, ¶ 12, 136 P.3d 610.

**6.** Rule 11.4, Rules Governing Disciplinary Proceedings, 5 O.S.2001, Ch. 1, App. 1–A providing:

"An application for reinstatement must establish affirmatively that, if readmitted or if the suspension from practice is removed, the applicant's conduct will conform to the high standards required of a member of the Bar. The severity of the original offense and the circumstances surrounding it shall be considered in evaluating an application for reinstatement. The burden of proof, by clear and convincing evidence, in all such reinstatement proceedings shall be on the applicant. An applicant seeking such reinstatement shall be required to present stronger proof of qualification than one seeking admission for the first time. The proof presented must be sufficient to overcome the Supreme Court's former judgment adverse to the applicant. Feelings of sympathy toward the applicant must be disregarded. If applicable, restitution, or the lack thereof, by the applicant to an injured party will be taken into consideration by the Trial Panel on an application for reinstatement. Further, if applicable, the Trial Panel shall satisfy itself that the application complied with Rule 9.1 of these rules."
*In re Reinstatement of Mumina*, see note 5, supra; *Matter of Reinstatement of Katz*, 1995 OK 115, ¶ 20, 907 P.2d 1029.

**7.** Rule 11.1, Rules Governing Disciplinary Proceedings, 5 O.S. Supp.2001, Ch. 1, App. 1–A providing in pertinent part:

"A person whose name has been stricken from the Roll of Attorneys for nonpayment of dues,

ported by evidence of the attorney's unauthorized practice of law during his initial suspension in *Munson I* along with his lack of candor concerning the factors leading up to his 1993 resignation and by uncertainty concerning his competency to practice law raised by the lack of strict compliance with the rules governing suspension and reinstatement proceedings.

## FACTS RELEVANT TO REINSTATEMENT PROCEEDINGS

¶ 3 Munson was admitted to the practice of law on August 17, 1973. Fifteen years later, we suspended the attorney for one year on two counts of misrepresentation and neglect. Just three years later, after the trial panel recommended a suspension of two years and one day, we approved Munson's application for resignation pending disciplinary proceedings.

¶ 4 The transactions leading to the attorney's resignation grew out of two consolidated complaints. SCBD No. 3840 arose from transactions involving an attempt by Munson and the Vammen family to set up an integrated farming operating. The Vammens loaned the attorney $62,000.00 in conjunction with the business venture. When the attorney was unsuccessful in getting further financing, the Vammens requested that their monies be returned.

¶ 5 In an attempt to pay one of the family members their portion of the funds, the attorney drew a check for $46,000.00 on his trust account when the balance on the date of the check's issuance was $187.75. Two weeks later, the attorney again attempted to pay the same family members. At that time, while in Jay, Oklahoma, Munson represented to a bank officer of the Delaware County Bank that he had closed a real estate transaction for clients purchasing land from the Vammens. Munson advised the officer that he needed to deposit a check for $48,000.00 on a Tahlequah account to an account in the Delaware County Bank and then have a wire sent from the Jay bank to the Vammens' bank in Texarkana for $46,000.00. Based on the officer's prior business dealings with Munson and the representations involving the land sale, the wire transfer was approved. When the check was deposited in the Delaware County Bank, no such real estate transaction had occurred and the balance in the Tahlequah bank account was in the negative. The Delaware County Bank did not receive all of its funds until after having filed suit against the attorney and engaging in collection efforts on the summary judgment entered in the cause.

¶ 6 Another Vammen family member sought repayment of her portion of the investment. Munson wrote a check on the Delaware County Bank trust account for $6,851.33. The check was dishonored. When the check was issued, the account contained only $956.47.

¶ 7 The trial panel conducted a hearing in this matter on December 11, 1992. In January of the next year, it issued a report which recommended that the attorney be suspended for a period of two years and one day.

¶ 8 While SCBD No. 3840 was pending, a complaint was filed in SCBD No. 3894 alleging three counts of misconduct. We consoli-

or who has been suspended from the practice of law for a period of longer than two (2) years or disbarred or who has resigned membership in the Association may be readmitted to the practice of law only through the following procedures:
(a) The applicant shall file an original and ten copies of a petition for reinstatement with the Clerk of the Supreme Court, and attach thereto (1) an affidavit showing all of the applicant's activities since the termination or suspension of his right to practice law and the applicant's place or places of residence since that date; and (2) the applicants affidavit and the affidavits of the court clerks in the several counties in which he has resided, establishing that the applicant has not practiced law in their respective courts since the termination or suspension of his right to practice law. The applicant shall concurrently furnish a copy of said petition and all other documents filed with the Clerk of the Supreme Court to the General Counsel of the Oklahoma Bar Association. . . . (c) The applicant shall pay a fee to cover the expenses of investigating and processing the application as determined by the Professional Responsibility Tribunal. In addition, the applicant shall pay the cost of the original and one copy of the transcript of any hearings held in connection with the application. . . ." *State ex rel. Oklahoma Bar Ass'n v. Pacenza (Pacenza I )*, 2006 OK 23, ¶ 2, 136 P.3d 616.

dated this complaint with the prior one for purposes of considering the attorney's application for resignation. The first two counts of the consolidated case involved Munson's having taken a check for $25,972.42 from a client, Betts Gordon (Gordon), "for safe keeping." The representation involved a probate matter. Shortly after obtaining the check, the attorney cashed the same and allegedly placed the funds in a zipper bag in an office safe. When several months passed and nothing occurred in the probate case, Gordon's sons sought a return of the monies. They filed a complaint with the Bar Association and Munson agreed to allow a Bar Association representative to come to his office and verify that the funds were being held there. When the Bar Association investigator arrived, Munson refused to allow the representative to count the monies. Several days later, the attorney deposited $25,972.42 in Gordon's account in Boatman's Bank in Tulsa. Initially, the Bar Association did not receive a response to the complaint filed in the cause. Munson appeared only upon a subpoena having issued. The attorney testified that he had mailed a response to the Bar Association from Tahlequah on November 28, 1992. Nevertheless, when the Bar Association received the response, it carried an Oklahoma City postmark of December 4th.

¶ 9 The third count arose out of the attorney having been appointed executor in the estate of David E. Deatherage on September 19th, 1989. Evidently, the attorney took this appointment during the time of his suspension in *Munson I*.[8] In May of the following year, Munson opened an account in the First State Bank of Tahlequah in the estate's name. When the deceased's wife contacted him about social security benefits she was receiving for her minor daughter, the attorney suggested that she leave the monies with

him until he could gain some guidance from the Social Security Administration. On September 21, 1992 the wife wrote Munson a check for $22,505.37. He deposited the check into the estate account which then contained approximately $1,885.83. Four days later, a check cleared the account dated September 14th in the amount of $17,184.58. The check was made payable to one of Munson's other clients as repayment for monies he was holding on her behalf.

¶ 10 The attorney filed his petition for reinstatement on August 3, 2009 supplementing it on the next day with affidavits of court clerks inadvertently left out of the original filing. The hearing on reinstatement was held before the trial panel on November 18, 2009. The trial panel issued its report on January 5, 2010 determining that Munson had not met the burden of proof for reinstatement and recommending that reinstatement be denied and costs be imposed. On the same day, the Bar Association filed an application for the assessment of costs in the amount of $1,705.47. The order setting a briefing schedule issued on January 6, 2010. Munson was given an extension to February 3rd for the filing of his brief in chief. The briefing cycle was completed on March 3, 2010 with the filing of the attorney's supplemental answer brief.

### JURISDICTION, STANDARD OF REVIEW, AND BURDEN OF PROOF

 ¶ 11 It is this Court's nondelegable, constitutional responsibility to regulate both the practice and the ethics, licensure, and discipline of the practitioners of the law. The duty is vested solely in this department of government.[9] Our determinations are made *de novo*.[10] Although given great weight,[11] neither the findings of fact of the

---

8. The period of suspension in *Munson I* began on December 12, 1988 and ran through January 4, 1991. See ¶ 21, infra.

9. Title 5 O.S.2001 § 13; *State ex rel. Oklahoma Bar Ass'n v. Farrant*, 1994 OK 13, ¶ 13, 867 P.2d 1279; *Tweedy v. Oklahoma Bar Ass'n*, 1981 OK 12, ¶ 4, 624 P.2d 1049.

10. *In re Reinstatement of Otis*, see note 5, supra; *State ex rel. Oklahoma Bar Ass'n v. Hulett*, 2008

OK 38, ¶ 4, 183 P.3d 1014; *Matter of Reinstatement of Jones*, 2006 OK 33, ¶ 7, 142 P.3d 380.

11. *Matter of Reinstatement of Pacenza (Pacenza II)*, 2009 OK 9, ¶ 7, 204 P.3d 58; *In re Reinstatement of Holden*, 2003 OK 28, ¶ 5, 66 P.3d 416; *Matter of Reinstatement of Kamins*, 1988 OK 32, ¶ 18, 752 P.2d 1125.

trial panel nor its view of the evidence or the credibility of witnesses bind this Court. The recommendation is merely advisory.[12] We are bound neither by its findings nor its assessments as to the weight or credibility of the evidence.[13] A thorough and complete exploration of all relevant facts is mandatory in consideration of matters to regulate the practice of law and legal practitioners.[14] Attorneys suspended for disciplinary reasons will not automatically be reinstated on a *prima facie* showing that the attorney has not engaged in improper conduct during the suspension period.[15]

¶ 12 A suspension from the practice of law for a period in excess of two years is tantamount to disbarment in that the suspended lawyer must follow the same procedures for readmittance as would a disbarred counterpart.[16] Before an attorney who has been disciplined for more than two years may be readmitted to the practice of law, it must be established that the lawyer's conduct will conform to the high standards required of a member of the Oklahoma Bar. The burden is on the applicant to demonstrate by clear and convincing evidence that the prerequisites for reinstatement are satisfied.[17] The applicant must present stronger proof of qualifications than one seeking first time admission.[18]

¶ 13 Rule 11.5, Rules Governing Disciplinary Proceedings, 5 O.S.2001, Ch. 1, App. 1–A

requires the trial panel to make specific findings regarding whether: 1) the petitioner possesses the good moral character which would entitle him to be admitted to the Bar Association; 2) the petitioner has engaged in the unauthorized practice of law during the period of suspension; and 3) the petitioner possesses the competency and learning in the law required for admission to the practice of law in the State of Oklahoma. In addition, the Court considers the following eight factors: 1) the applicant's present moral fitness; 2) demonstrated consciousness of the conduct's wrongfulness and the disrepute it has brought upon the legal profession; 3) the extent of rehabilitation; 4) the original misconduct's seriousness; 5) conduct after resignation; 6) time elapsed since the resignation; 7) the applicant's character, maturity, and experience when suspended; and 8) present legal competence.[19] Each reinstatement decision is determined on a case-by-case basis, carefully weighing all factors.[20]

¶ 14 **a. The attorney has not demonstrated the clear and convincing evidence necessary for his readmittance to the practice of law in Oklahoma.**

¶ 15 Munson asserts that he provided clear and convincing evidence that his application for reinstatement should be granted. He contends that he substantially complied with Rule 9.1, Rules Governing Disciplinary Proceedings, 5 O.S.2001, Ch. 1, App. 1–A.[21] The

**12.** Rule 6.15, Rules Governing Disciplinary Proceedings, 5 O.S.2001, Ch. 1, App. 1–A; *State ex rel. Oklahoma Bar Ass'n v. Besly*, 2006 OK 18, ¶ 2, 136 P.3d 590; *Matter of Reinstatement of Rhoads*, 2005 OK 53, ¶ 2, 116 P.3d 187; *State ex rel. Oklahoma Bar Ass'n v. Taylor*, 2003 OK 56, ¶ 2, 71 P.3d 18.

**13.** *Matter of Reinstatement of Pacenza (Pacenza II )*, see note 11, supra; *State ex rel. Oklahoma Bar Ass'n v. Raskin*, 1982 OK 39, ¶ 11, 642 P.2d 262.

**14.** *Tweedy v. Oklahoma Bar Ass'n*, see note 9, supra.

**15.** *Matter of Reinstatement of Pierce*, 1996 OK 65, 919 P.2d 422; *Matter of Reinstatement of Cantrell*, 1989 OK 165, ¶ 2, 785 P.2d 312.

**16.** Rule 11.1, Rules Governing Disciplinary Proceedings, see note 7, supra; *Oklahoma Bar Ass'n v. Pacenza (Pacenza I )*, see note 7, supra.

**17.** Rule 11.4, Rules Governing Disciplinary Proceedings, see note 6, supra; *Matter of Reinstatement of Jones*, see note 10, supra.

**18.** Rule 11.4, Rules Governing Disciplinary Proceedings, see note 6, supra; *In re Reinstatement of Fraley*, 2005 OK 39, ¶ 37, 115 P.3d 842.

**19.** *In re Reinstatement of Otis*, see note 5, supra; *Matter of Reinstatement of Blevins*, 2002 OK 78, ¶ 3, 59 P.3d 510; *Matter of Reinstatement of Kamins*, see note 11, supra.

**20.** *In re Reinstatement of Page*, 2004 OK 49, ¶ 3, 94 P.3d 80; *In re Reinstatement of Anderson*, 2002 OK 64, ¶ 4, 51 P.3d 581, *Matter of Reinstatement of Cantrell*, see note 15, supra.

**21.** Rule 9.1, Rules Governing Disciplinary Proceedings, see note 3, supra.

attorney insists that he filed the necessary affidavit, paid the costs of the proceeding, reimbursed the Client Security Fund for the one claim paid on his behalf, the bank for its loses, and that all other parties have been fully reimbursed.[22] He argues that he demonstrated his good moral character, competency in the law, and that he has not engaged in the unauthorized practice of law **since his 1993 resignation.**

¶ 16 The trial panel found that Munson failed to present clear and convincing evidence of his present moral fitness to practice law and consciousness of the wrongfulness of his acts and the disrepute brought on the profession. Nevertheless, the trial panel did believe that Munson met the burden of proof on the issue of his learning and competency in the law. The Bar Association disagrees with Munson's contention that he substantially complied with Rule 9.1, joining in the trial panel's recommendation that the attorney has not demonstrated the clear and convincing evidence necessary to support reinstatement and requesting that we deny reinstatement and impose costs of the proceeding. We agree with these recommendations. However, unlike the trial panel, we are not persuaded that Munson met the burden of proof

as it relates to his competency to practice law. Our lack of confidence in the attorney's legal abilities arises from his failure to strictly comply with the rules governing suspension and reinstatement proceedings both in *Munson I* and in *Munson II*.

¶ 17 **a) Munson's reliance on his appointment in a prominent criminal case as explaining his actions in misappropriating and converting funds is unconvincing when the attorney did not rely on the criminal proceedings during the hearing leading up to his resignation in** *Munson II.*

¶ 18 In 1986, two years before his initial suspension, Munson was appointed as counsel for Charles Troy Coleman in a well-publicized, high-profile, murder trial which ended in Coleman's execution. In the reinstatement hearing, the attorney testified that his involvement in the Coleman case put him in a downward "spiral" which led to his first suspension.[23] Once he was reinstated, Munson testified that he still found himself trying to make up for the "Coleman thing" but that he continued to "spiral" into a position where he felt forced to misuse his client's funds [24]

---

**22.** Making full restitution to a lawyer's victims will neither preclude discipline nor insure reinstatement. *In re Reinstatement of Otis*, see note 5, supra; *Matter of Reinstatement of Massey*, see note 5, supra.

**23.** Transcript of Reinstatement Hearing, November 18, 2008, Edward Munson testifying in pertinent part at pp. 66–67:
"... But the Coleman case had distracted me a lot from that because it—it required things far beyond what I ever had imagined a case—a criminal case particularly would entail because there was just vast amounts of research.... And that just, in my particular case, started a spiral, a spiral which I fought to handle and was successful at for a long time, but it eventually catches up with you and in my suspension case, that was about two particular clients, the Geralds and the Carrs, and I didn't get to their work as quick as it should have been.
And when they came in to me, I did the worst thing I could have done. I lied to them. You know, I said oh, yeah, I'm doing that, that's being filed. And in a couple of instances, I even did something worse. I blamed it on other people. I blamed it on the court clerk. I blamed it on a judge who I couldn't get in to see for a hearing, you know, and that's where that kind of spiral started...."

**24.** Transcript of Reinstatement Hearing, November 18, 2008, Edward Munson testifying in pertinent part at pp. 69–70:
"... Q And when you got reinstated, subsequent to that approximately, what, five years later? Four to five years later, it appears you had Bar charges filed on you in 1992; is that correct?
A Yes, that's—that's correct....
And I soon found myself still trying to make up for this Coleman thing. Again, and I describe it and maybe I'm wrong, I'm not an expert in there, but I talk about that as a spiral. It actually started with Coleman and I fought hard and I was able to keep up with it and then it starts taking is toll and it starts spiraling faster and starts going deeper and deeper, which means that you have to work harder to try and stay above water.
And what happens then is eventually, something happens, you know, that fee doesn't get paid when you thought, clients don't come in like you thought and you don't stay above water and then the complaint comes from the Bar and that's exactly what happened.
Q And during that time period, you were taking client funds that were to be in trust or to be paid in trust for a number of things that weren't related to that particular client, isn't that true?

going so far as to describe his actions as "robbing Peter to pay Paul." [25]

■ ¶ 19 Misappropriation is the most serious infraction occurring with the handling of trust monies.[26] There is no question that the attorney misappropriated client funds. What is puzzling is Munson's after-the-fact reliance on his representation of a criminal defendant to demonstrate how his money problems began and intensified. In Munson's attempt to defend his actions and avoid discipline in *Munson II*, the cause in which he resigned and from which he now seeks reinstatement, he never once related any of his problems to the defense of Coleman in the hearing before the trial panel. There is not a single reference, in the one-hundred-and-twenty-seven-page transcript of proceedings, where Coleman is even mentioned.[27] The lack of any such testimony calls into question Munson's veracity before the trial panel in the reinstatement proceedings.

¶ 20 **b) The record supports a conclusion that Munson engaged in the unauthorized practice of law during his suspension in *Munson I* and that he was less than truthful about the representation in his testimony before the trial panel on reinstatement.**

■ ¶ 21 The period of suspension in *Munson I* began on December 12, 1988 and ran through January 4, 1990. As previously noted, it appears that the attorney accepted a probate cause during this time period.[28] In its investigation of the current cause, the Bar Association discovered that the attorney filed an application for attorney fees in the United States District Court for the Eastern District on November 10, 1992.[29] Attached to that filing was a detailed hourly billing chart for a cause Munson handled for Bill Thompson. The time sheets contain thirty-two (32) entries beginning on the day after the suspension order entered and ending on October 6, 1989.[30] These entries, in and of themselves, demonstrate that the attorney was involved

A That's true...."

25. Transcript of Reinstatement Hearing, November 18, 2009, Edward Munson testifying in pertinent part at pp. 177–78:
"... Q Well, if you weren't living an extravagant life-style, what, in fact, did you do with the approximately $75,000 in client money that you stole?
A It was in this spiral. It went to the next client. There was a little bit short there. It went to the next client. There was a little bit short there, but initially, there was a couple of clients I had some deals going with that said, you know, here is this money, we'll use it for projects and then we didn't do that.
Q So what you were doing was robbing Peter to pay Paul, essentially playing the float at the bank?
A Well, I don't know about playing the float, because there wasn't any float. It was bad, you know, it was paying Peter or robbing from Peter to pay Paul...."

26. This Court has defined three levels of culpability when evaluating the mishandling of funds in attorney disciplinary proceedings. They are: 1) commingling; 2) simple conversion; and 3) misappropriation, i.e., theft by conversion or otherwise. Commingling occurs when a client or third person's monies are combined with the attorney's personal funds. Complete separation of the money is required to insure proper accounting. Simple conversion occurs when an attorney applies a client or third person's money to a purpose other than that for which it was entrusted. The third, and most serious infrac-

tion, occurs when funds are misappropriated. This happens when an attorney purposefully deprives a client or third person of money by way of deceit or fraud. *Matter of Reinstatement of Otis*, see note 5 at ¶ 16; *State ex rel. Oklahoma Bar Ass'n v. Parsons*, 2002 OK 72, ¶¶ 12–14, 57 P.3d 865.

27. Exhibit 17, Transcript of Proceedings, December 11, 1992.

28. See ¶ 9, supra.

29. We do not find the Bar Association's allegations that Munson engaged in the unauthorized practice of law after resigning from the practice of law in *Munson II* by preparing a deed for a friend convincing. Munson's supervising attorney submitted his affidavit indicating that he reviewed the deed before delivery. See, Petitioner's Exhibit 24, Affidavit of Thomas M. Hart providing in pertinent part:
"... 1. I am a licensed and practicing attorney in the State of Minnesota....
4. Mr. Munson has brought to me the attached documents regarding work he performed for his friend, Lloyd C. Bailey, pro bono, in 2003. Mr. Munson performed this work with my prior consent. My recollection is that I reviewed the documents as prepared by Mr. Munson prior to their execution...."

30. Exhibit 12, District Court Records, filed October 13, 2009.

in the unauthorized practice of law during his initial suspension.

¶ 22 Munson acknowledged that there was a billing record for December 13, 1988 and a number of similar billings in the Thompson case thereafter. Nevertheless, when the attorney was questioned about these billings, he attempted to explain them away as computer programming errors or mistakes of an unnamed assistant.[31]

¶ 23 The evidence of the unauthorized practice of law while under suspension is damning in and of itself. Similar causes have resulted in discipline ranging from public censure to disbarment depending on the mitigating circumstances.[32] Even more trou-

---

**31.** Transcript of Reinstatement Hearing, November 18, 2009, Edward Munson testifying in pertinent part at pp. 170–174:

"... Q (by Mr. Rossier) Mr. Munson, looking on page 4 of that billing record, about halfway down, I notice that there is a billing record for Receipt [sic] and review of correspondence ... regarding client's psychiatric exam dated December the 13th, 1988? Do you see that?
A Yes.
Q All right. That would be after you were suspended from the practice of law; is that right?
A That's correct. . . .
Q As a matter of fact, continuing on page 5 and going all the way through page 6, we find continuous record of billing in the Social Security matter all the way up until October the 6th of 1989. . . .
A Okay.
Q Do you see that? Now, sir, these are contemporaneous billing records; is that correct?
A Contemporaneous billing records? No.
Q Meaning that the activities listed here on the dates occurred on the dates that are listed next to them?
A These would have been inserted into a computer program by—I cannot remember her name. A lady who worked there doing the billings and things.
Q Yes, sir. I'm simply asking if the dates on the left-hand column are—indicate the time period in which the activity in the middle column took place.
A I—I assume so. I—
Q All right. So what this indicates is that you billed a client for legal services during the time that you were suspended from the practice of law in 1989; is that right?
A As I recall, this billing did not go to the client. This—if my assistant in billing did this as usual, she would have made this up for the Social Security Administration and there were several of these that things kept coming in during the year of my suspension and I'd get ahold of people and say here's this, here's that, here's this, telling people that I couldn't do anything. You know, this—this—
Q Did you not submit these records to the Court as proof of your fee owed in this case?
A That would—again I assume would be correct as to what was presented. I don't know if this—
... Q Okay. Below the PRIVACY ACT NOTICE, there is a line that reads 'I request approval to charge a fee of' and the types—

number in there is $3,429.20 for services performed as a representative of Bill Thompson. Services began 4–27–87. Services ended 1–10–1992. And at the bottom where it says Signature of Representative, is that your signature?
A That is my signature.
Q So according to this, you're asking the court to approve a fee where you represented this person between 1987 and 1992 continuously; is that right?
A That's the way the form is set up, yes, sir. . . .
A Mr. Thompson brought this case back to me because he hadn't been able to find anybody in the interim to take it and after I was reinstated and he heard about that, he brought it back to me. The billings, you know, honestly, I don't know why we put those on there. At that time, it was—
Q So what you're telling us, Mr. Munson, is that either you billed a client and performed services while you were suspended from the practice of law or you submitted a fraudulent request for attorney's fees to a U.S. District Court. Which is it?
A Well—..."

**32.** *In re Reinstatement of DeBacker,* 2008 OK 17, ¶ 23, 184 P.3d 506 [Sentence deferred one year where attorney inadvertently held himself out as licensed for 27 years while in corporate practice.]; *State ex rel. Oklahoma Bar Ass'n v. Wagener,* 2005 OK 3, ¶ 13, 107 P.3d 567 [Engaging in unauthorized practice of law during suspension and failure to file petition in error and notify client warranted six month suspension.]; *State ex rel. Oklahoma Bar Ass'n v. Malloy,* 2006 OK 38, ¶ 13, 142 P.3d 383 [Attorney suspended for nine months for unauthorized practice of law.]; *State ex rel. Oklahoma Bar Ass'n v. Patterson,* 2001 OK 51, ¶ 39, 28 P.3d 551 [Attorney misconduct in engaging in the unauthorized practice of law in the federal circuit court during a period of suspension subject to public censure.]; *State ex rel. Oklahoma Bar Ass'n v. Patmon,* 1998 OK 91, ¶ 21, 975 P.2d 860, *cert. denied,* 526 U.S. 1120, 119 S.Ct. 1772, 143 L.Ed.2d 801 (1999), *rehearing denied,* 527 U.S. 1058, 120 S.Ct. 25, 144 L.Ed.2d 828 (1999) [Attorney, who among other things, assisted secretary in the unauthorized practice of law suspended for two years and a day.]; *State ex rel. Oklahoma Bar Ass'n v. Wolfe,* 1997 OK 47, ¶ 13, 937 P.2d 988 [Attorney disbarred because of unauthorized practice of law while under disciplinary suspension coupled with other misconduct.]; *State ex rel. Oklahoma*

bling is Munson's unwillingness to be straightforward and honest in his answers regarding the incident.[33] Finally, apparently the attorney filed a false affidavit upon his reinstatement in 1990. At the time of his reinstatement without order of the Court, Rule 11.8, Rules Governing Disciplinary Proceedings, 5 O.S. Supp.1989, Ch. 1, App. 1–A,[34] required Munson to file a statement averring that he had not engaged in the unauthorized practice of law during his one-year term of suspension. The evidence before this Court demonstrates the falsity of any such statement filed.

¶ 24 **c) The attorney's failure to strictly comply with the conditions of his suspension and the with the provisions of Rule 9.1 militate against a finding of knowledge of the law and competency in its practice.**

¶ 25 When the order of suspension in *State ex rel. Oklahoma Bar Ass'n v. Munson (Munson II)*, 1993 OK 12, 848 P.2d 555 issued, the attorney was directed to pay costs of $2,228.51 "within a reasonable time from the date" of the order.[35] Munson was notified by the Bar Association in June of 2007 that the costs of $2,228.51 for the 1993 proceeding remained outstanding.[36] They were not received by the Bar Association until December 11, 2007.[37]

¶ 26 Munson testified that he felt that, under the circumstances, his failure to pay the costs of the proceeding for some fourteen

---

*Bar Ass'n v. Holden*, 1996 OK 88, ¶ 8, 925 P.2d 32 [Attorney suspended from the practice of law for two years and one day for the unauthorized practice of law while under disciplinary suspension.]; *State ex rel. Oklahoma Bar Ass'n v. O'Neal*, 1993 OK 61,¶ 9, 852 P.2d 713 [Attorney publicly censured for unauthorized practice of law while under suspension for nonpayment of bar dues and noncompliance with CLE requirements.]; *State ex rel. Oklahoma Bar Ass'n v. Downing*, 1993 OK 44, ¶ 11, 863 P.2d 1111 [Attorney disbarred because while under suspension, engaged in the unauthorized practice of law, lied to a client about the status of a case and about the attorney's ability to continue representation, and failed to act with due diligence and competence.].

**33.** It is likewise disingenuous to assert that we should be unconcerned about such unauthorized practice of law because it occurred in *Munson I* rather than in *Munson II*. The attorney's tendered resignation made it unnecessary for this Court to peruse the record made in the hearings before the trial panel in *Munson II*. Furthermore, the Motion and Brief for Attorney Fees was not even filed in the District Court until November 10, 1992, almost two years after the suspension imposed in *Munson I* terminated. The document is found as an attachment to Exhibit 12, Filed on October 13, 2009. In relation to the question of her client, Munson's attorney argued that the line of questioning was objectionable. Transcript of Reinstatement Hearing, November 18, 2009, providing in pertinent part at pp. 174–75:

"... MS. TIMMONS: I'm going to object to this line of questioning. We have documents that were done between his 1988 suspension and his 1993 resignation. The resignation in 1993 dealt with actions that were pending, actions that occurred prior to that, actions that

might have come in after that case in point being the Fishinghawk case, so I don't think it's relevant to his reinstatement hearings today.
If the bar association had these available records in 1989 and also in—well, they had them in 1993 and when he resigned pending disciplinary proceedings, this is one of the things that was the cause of his resignation.
So I think that these records don't go to his present fitness and they don't go to his reinstatement effective this time.
If the Bar didn't specifically bring them up between 1988 and 1993, I don't think they ought to be able to bring them up now.
MR. COLLINS: I'm going to overrule the objection ..."

**34.** Rule 11.8, Rules Governing Disciplinary Proceedings, 5 O.S. Supp.1989, Ch. 1, App. 1–A providing in pertinent part:

"A lawyer who has been suspended for two (2) years or less upon disciplinary charges may resume practice upon the expiration of the period of suspension by filing with the Clerk of the Supreme Court an original and two (2) copies of an affidavit affirming that affiant has not engaged in the unauthorized practice of law or otherwise violated the rules of the association or the terms of the affiant's order of suspension. . . .

**35.** *State ex rel. Oklahoma Bar Ass'n v. Munson (Munson II)*, see note 4, supra.

**36.** Exhibit 5, Letter from Dan Murdock to Edward L. Munson dated June 7, 2007.

**37.** Exhibit 6, Receipt of Costs, filed on December 14, 2007.

(14) years was reasonable. Nevertheless, he recognized that others might not agree with his position. We find ourselves among those who disagree. A reasonable time might have been the span of five (5) years, the mandatory suspension period. During that time, Munson could have met the obligation by setting aside $450.00 per year, a not overly burdensome sum.

¶ 27 Rule 9.1, Rules Governing Disciplinary Proceedings, 5 O.S.2001, Ch. 1, App. 1–A [38] provides that when a lawyer is suspended there is an affirmative duty within twenty (20) days, to notify all clients *via* certified mail with pending business of the inability to represent them. There is also a requirement to formally withdraw from all pending cases. Finally, during the same twenty (20) day period, the lawyer must file an affidavit with the Commission and with the Clerk of the Supreme Court affirming his compliance with the rule and providing a list of the clients notified along with a summary of all other state and federal courts and administrative agencies before which the lawyer is admitted to practice law. The rule provides in mandatory language that "[p]roof of substantial **compliance by the lawyer with this Rule 9.1 shall be a condition precedent to any petition for reinstatement.**"

¶ 28 Following his suspension in *Munson I*, the attorney did not strictly comply with the requirements of Rule 9.1. Rather than filing the required affidavit within the twenty (20) day period, he filed it nine (9) days late and found it necessary to supplement it with a list of clients and the agencies and courts before which he practiced ten (10) days later.[39] Nevertheless, the paperwork was filed within a reasonable time after suspension and contained all documentation necessary for meeting the standards imposed by the rule. The combined filings represent an instance of substantial compliance.

¶ 29 As early as the date the request for resignation in *Munson II* was filed, the attorney acknowledged the pending disciplinary proceedings and stated in pertinent part:

"... I have familiarized myself with the provisions of Rule 9.1, RGDP, and do hereby agree to comply with all provisions of Rule 9.1, within twenty (20) days following the effective date of the Order entered by the Supreme Court approving this resignation...." [40]

The attorney did not live up to his representation. He did not follow the twenty (20) day mandate of Rule 9.1. No filing was made until March 4, 2008. Some fourteen (14) years after his suspension in *Munson II*, the attorney filed an affidavit providing that to the "best of his knowledge" he had substantially complied with Rule 9.1 [41] as it related to the notification of clients and the filing of withdrawals in all pending cases. He excuses his inability to provide the affidavits required by the rule "because of the length of time since the Resignation and the present unavailability of the records thereof."

¶ 30 If Munson had followed the mandate of Rule 9.1 and filed his affidavits within the twenty (20) day mandated period, there would have been no reason to use the passage of time and the destruction or unavailability of records as an excuse for noncompliance. As a partial showing of substantial compliance, Munson relied upon the public nature of his transgressions, *i.e.* their publication in the local press. However, during the hearing before the trial panel in *Munson II*, the attorney argued that the complaint should be dismissed. Munson's reasoning for the assertion was that: 1) the misappropriation of funds did not occur within the lawyer-client relationship; [42] and 2) **the way**

---

**38.** Rule 9.1, Rules Governing Disciplinary Proceedings, see note 3, supra.

**39.** The first affidavit was filed on January 11, 1989, and the second followed on January 19th of the same year. The affidavits appear as Exhibits 3 and 4.

**40.** The affidavit is attached to Exhibit 2, the Bar Association's Application for Order Approving Resignation Pending Disciplinary Proceedings of Edward L. Munson, filed on February 1, 1993.

**41.** Exhibit 7, Affidavit of Edward L. Munson, filed on March 4, 2008.

**42.** A lawyer may be disciplined for actions outside a lawyer-client relationship. Rule 1.3, Rules Governing Disciplinary Proceedings, 5 O.S.2001, Ch. 1, App. 1–A providing in pertinent part:

"The commission by any lawyer of any act contrary to prescribed standards of conduct, whether in the course of his professional capacity, or otherwise, which act would reason-

the matter was handled had kept it from the public.[43]

¶ 31 Rather than paying costs associated with *Munson II*, within a reasonable time of the date of the order of suspension, the attorney waited fourteen (14) years and only paid the same upon his decision to file a petition for reinstatement. The attorney substantially complied with Rule 9.1 after his suspension in *Munson I*. Nevertheless, despite his statement indicating he would familiarize himself with the rule and comply, he failed to do so after his resignation in *Munson II*. His conflicting excuses and reliance on the passage of time are unconvincing and do not provide support for the argument of substantial compliance.

## CONCLUSION

¶ 32 The record presents incontrovertible evidence that Munson engaged in the unauthorized practice of law during his initial suspension. We are faced with evidence that the attorney did not strictly comply with the rules governing either his suspension or his reinstatement. The attorney gave equivocable answers both to questions regarding issues related to his unauthorized practice of law and the facts leading up to his second downfall. Nevertheless, it is obvious that the attorney has done a good deal to get his finances and his life in order.

¶ 33 In making a reinstatement decision, this Court must disregard feelings of sympathy,[44] recognizing that the petitioner's burden of proof is a heavy one.[45] While we are concerned with any adverse effect reinstate-

ment might have on the practicing bar, our foremost consideration is always to protect the public welfare.[46] After having given due consideration to the evidence contained in this record and the appropriate factors examined in reinstatement proceedings, we determine that the petitioner has failed to carry his burden to show by clear and convincing evidence [47] that he is entitled to reinstatement. Therefore, reinstatement is denied and costs of $1,705.47 [48] are imposed.

**PETITION FOR REINSTATEMENT DENIED; PETITIONER ORDERED TO PAY COSTS OF $1,705.47.**

EDMONDSON, C.J., TAYLOR, V.C.J., HARGRAVE, OPALA, WATT, WINCHESTER, COLBERT, REIF, JJ., concur.

KAUGER, J., not participating.

---

ably be found to bring discredit upon the legal profession, shall be grounds for disciplinary action . . ."

**43.** Transcript of Proceedings, December 11, 1992, Edward L. Munson speaking in his opening statement and providing in pertinent part at p. 11:

"... I do not feel that this is the kind of matter wherein a client has been harmed. It is personal, and so whether you say it's my efforts or the bank's efforts or just the way things worked out this matter has been kept from the public. It has been kept by the court and by the bank and by myself private to where it would not reflect generally to the public. For those reasons, I do not feel that the compliant is sufficient. . . ."

**44.** *Matter of Reinstatement of Page*, see note 20, supra.

**45.** *In re Reinstatement of Hird*, 2008 OK 25, ¶ 3, 184 P.3d 535; *Matter of Reinstatement of Bradley*, 1993 OK 107, ¶ 8, 897 P.2d 243; *Matter of Reinstatement of Kamins*, see note 11, supra.

**46.** *In re Reinstatement of Fraley*, see note 18, supra; *Matter of Reinstatement of Cantrell*, see note 15, supra.

**47.** Rule 11.4, Rules Governing Disciplinary Proceedings, see note 6, supra; *Matter of Reinstatement of Jones*, see note 10, supra.

**48.** Rule 11.1, Rules Governing Disciplinary Proceedings, see note 7, supra.